UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 06-22494-CIV-GOLD/MCALILEY

LIBERTY MUTUAL INSURANCE
COMPANY.,

    Plaintiff,

v.

AVENTURA ENGINEERING & CONSTRUCTION
CORP. et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION ON LIBERTY MUTUAL INSURANCE COMPANY'S MOTION FOR ORDER TO SHOW CAUSE FOR CONTEMPT IN LIEU OF ITS MOTION FOR ENTRY OF WRIT OF ATTACHMENT**

Pending before the Court is Liberty Mutual Insurance Company's Motion for Order to Show Cause for Contempt in Lieu of Its Motion for Entry of Writ of Attachment and for Contempt. [DE 286]. This matter was referred to me by the Honorable Alan S. Gold. [DE 287].

On January 8, 2008, the Honorable Alan S. Gold granted summary judgment in favor of Plaintiff, Liberty Mutual, and entered final Judgment against Defendants in the amount of $2,755,936.51. [DE 194, 195]. The final judgment also required Defendants to post collateral in the amount of $1,015,000.00, within twenty days of the date of that Order. Defendants have not posted the required collateral, nor have they paid the judgment, and efforts to collect on that judgment have been ongoing.

The current Motion addresses that Defendants' failure to post collateral, and asks the Court to enter an order directing Defendants to appear and show cause why they should not be held in contempt for failing to post the collateral.[1] Defendants oppose the Motion [DE 289],[2] Liberty Mutual filed a reply [DE 292], and I held an evidentiary hearing.[3] For the reasons stated below, I recommend against finding Defendants in contempt for their failure to post the required collateral.

## I.  Evidentiary hearing

In its motion, Plaintiff contends that Defendants, Aventura Engineering & Construction Corp, Cary Lopez and Rosaline Williams are in contempt for failing to post collateral in the amount of $1,105,000.00 no later than January 28, 2008, as required by the Court's Entry of Final Judgment. [DE 195]. At the evidentiary hearing, Liberty Mutual withdrew without prejudice its request for a finding of contempt against Defendant Aventura.[4] [DE 297, p. 75]. The remaining Defendants, Cary Lopez and Rosaline Williams, conceded that they have not posted the collateral required by the final judgment, but asserted that their failure to do so was

---

[1] In the same Motion Liberty Mutual also asked this Court to issue a writ of attachment against Defendants' property, without requiring Liberty Mutual to post a bond, as contemplated by Florida law. [DE 286, p. 5-6]. By separate order, I denied this request. [DE 293].

[2] On October 17, 2008, defendant Camille A. Davis filed a Suggestion of Bankruptcy and invoked the automatic stay provisions of 11 U.S.C. § 362(a). [DE 288]. Thus, the Court takes no action on Liberty Mutual's motion vis-a-vis Defendant Davis.

[3] The transcript of that hearing has been filed with the Court. [DE 297].

[4] The undisputed testimony at the evidentiary hearing established that Defendant Aventura had ceased doing business and did not have the assets necessary to post the collateral. [DE 297, pp. 9, 11].

not contemptuous but rather resulted from their inability to raise the necessary funds. [DE 297, pp. 10-11, 56-59].

Mr. Lopez testified that he applied for a bond in the amount of the collateral on behalf of himself and Ms. Williams, but that his application was denied. [DE 297, p. 10]. Mr. Lopez further testified that he is unable to post the required collateral in cash. [DE 297, p. 11]. On cross-examination, Mr. Lopez testified that he owns four parcels of property. He attempted to sell one of the parcels and offered to give Liberty Mutual the proceeds of the sale, Liberty Mutual eventually rejected the offer and the sale fell through. [DE 297, p. 15].

Regarding the remaining parcels, Mr. Lopez testified that two are located in Florida: one is his homestead and the other is owned jointly with his estranged wife, Defendant Camille A. Davis, who has declared bankruptcy. [DE 297, pp. 16-17]. Mr. Lopez testified that he has negative equity in his homestead property. [DE 297, pp. 40, 52-54]. The fourth parcel is an apartment building in New Orleans. According to Mr. Lopez, Liberty Mutual is already receiving the rents generated by the apartment building to satisfy its judgment against Defendants. [DE 297, pp. 40-41].

In addition to his real property, Mr. Lopez testified that he has personal property, located in his residence, valued, at most, at three thousand dollars. [DE 297, p. 39]. After Liberty Mutual received a break order allowing it to enter Defendants' residences and seize their personal property, Mr. Lopez offered to have an independent appraisal of his personal property and pay to Liberty Mutual the amount of the appraisal, in exchange for an agreement from Liberty Mutual not to seize the property. Liberty Mutual declined the offer. [DE 297, pp. 38-9,

51-52]. Mr. Lopez explained that his children's grandparents had offered to pay the appraised amount to ensure that the children's lives were not disrupted. [DE 297, pp. 22-3].

Mr. Lopez also testified that he is the trustee of a trust for the benefit of his minor children and that the trust received proceeds from a sale of real property in August 2008. According to Mr. Lopez, the trust instrument prohibits him from using the trust assets to pay his personal debts. [DE 297, pp. 26-9, 31-2].

Mr. Lopez started a new construction company and has begun to receive a salary from that company. Mr. Lopez testified that he is using his salary for his basic living expenses and that the new company has a negative net worth. [DE 297, pp. 30, 46-47]. He has IRAs and a 401K that were funded with only qualified contributions which, if liquidated, would amount to less than a $100,000. [DE 297, pp. 47-48, 50]. Mr. Lopez has not sought to liquidate those accounts. [DE 297, p. 50].

Ms. Williams also testified that she is not able to post the required bond. Ms. Williams owns one piece of real property, her homestead, in which she has negative equity. She values the contents of her home at about $8,000.00; she does not own a vehicle. [DE 297, p. 56-58]. As of the date of evidentiary hearing, Ms. Williams' bank account contained between $40.00 and $60.00 and her life insurance policies had no cash surrender value. [DE 297, p. 64]. Ms. Williams also has a 401K account worth approximately $60,000.00 to $70,000.00. The account is funded with qualified contributions. [DE 297, p. 65].

Like Mr. Lopez, Ms. Williams offered to have an independent appraisal of her personal property and pay to Liberty Mutual that amount, in exchange for an agreement from Liberty

Mutual to not seize the personal property. Liberty Mutual rejected the offer. [DE 297, p. 57]. Ms. Williams is also the trustee for two trusts for the benefit of her children. While the trusts received some funds from the sale of real property in August 2008, the trust documents do not allow Ms. Williams to disburse any of the proceeds to herself individually. [DE 297, 69-73].

**II.     Analysis**

Liberty Mutual is entitled to a finding of civil contempt only upon a showing, by clear and convincing evidence, of willful disregard for the authority of the court through failure to comply with a court order. *Georgia Power Co. v. Nat'l Labor Rel. Bd.*, 484 F.3d 1288, 1291 (11th Cir. 2007). Specifically, "[t]he clear and convincing evidence must establish that: (1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous; and (3) the alleged violator had the ability to comply with the order." *Id.*

> Once a party seeking civil contempt proves by clear and convincing evidence that the contemnor has violated a court order (such as failure to pay), the burden of production shifts to the contemnor to justify non-compliance with the order. While inability to pay is a defense to civil contempt, inability to pay is not a defense if the contemnor created the inability.

*Steffen v. Gray, Harris & Robinson, P.A.*, 283 F. Supp. 2d 1272, 1282 (M.D. Fla. 2003) (citations omitted). To satisfy this burden, "a contemnor demonstrates an inability to comply only by showing that he has made in good faith all reasonable efforts to comply." *Chairs v. Burgess*, 143 F.3d 1432, 1436 (11th Cir. 1998) (quotations omitted). Thus, "inability, as a defense to contempt, does not mean that compliance must be totally impossible." *Id.* at 1437. If the alleged contemnor makes a sufficient showing of inability, the burden shifts back to the initiating party. Therefore, the party seeking contempt has the ultimate burden of proof.

5

*Commodity Futures Trading Commission v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1529 (11th Cir. 1992).

The parties agree that the final judgment's directive that Defendants post collateral was valid, clear and unambiguous and that Defendants have not posted the required collateral. As a result, the only issue before the Court is whether Defendants Lopez and Williams had the ability to comply with the order. Put another way, the issue to be resolved is whether Lopez and Williams in good faith made all reasonable efforts to comply with the Court's Order.

After careful consideration of the testimony at the evidentiary hearing, the argument of counsel and the record in this action, the Court finds that Mr. Lopez and Ms. Williams carried their burden of production showing that they made, in good faith, all reasonable efforts to comply with the Court's Order to post collateral in the amount of $1,105,000.00. As a result, Liberty Mutual failed to establish by clear and convincing evidence that Mr. Lopez or Ms. Williams had the ability to comply with the Court's Order.

### A.   Cary Lopez

Mr. Lopez' unrebutted testimony established that he attempted, but was unable, to secure a bond for the collateral amount. He does not have the assets needed to post the collateral, particularly in light of the fact that Liberty Mutual has seized, or is attempting to seize, most of his assets in its efforts to satisfy the judgment. While he owns an interest in four parcels of property, Mr. Lopez persuasively demonstrated that he cannot use those assets to satisfy the collateral requirement. Mr. Lopez testified, without contradiction, that he has negative equity in his homestead property. His other Florida property is co-owned with his estranged wife, who

6

has declared bankruptcy, and thus the property cannot be sold. The rents from the New Orleans property are being turned over to Liberty Mutual in partial payment of Liberty Mutual's $2.8 million judgment. Finally, Mr. Lopez attempted to sell the property located in New York and turn the proceeds over to Liberty Mutual, but it appears Liberty Mutual rejected his proposal and the sale fell through.

Liberty Mutual received a break order allowing it to seize Mr. Lopez' personal property and rejected his offer to pay it the value of the personal property in order to avoid the seizure. He has a small income from his start up company, which has a negative net worth. The unrefuted evidence also showed that Mr. Lopez is not authorized to use the assets of the trust over which he is trustee to satisfy his personal financial obligations. Finally, Mr. Lopez has a modest amount in qualified retirement accounts.

Mr. Lopez is not required to bankrupt himself in order to show that the he has made all reasonable efforts to comply with the Court Order. *See National Labor Relations Board v. Triple A Fire Protection, Inc.*, No. 00-MC-15-M, 2003 WL 23207692, * 10 (S.D. Ala. March 26, 2003) (company not in contempt for failure to comply with court order when compliance would result in insolvency). This Court finds that Mr. Lopez has made all reasonable efforts to satisfy his obligations under the Order through: (1) attempting to secure a collateral bond, (2) tendering the equity in the New York apartments and the value of his personal property and (3) turning over his rental income.[5]

---

[5] Liberty Mutual contends that these efforts were directed at satisfying the judgment against Mr. Lopez, rather than the collateral requirement, but it was clear to this Court from Mr. Lopez' testimony that he considers these obligations together and that any actions he took were with the

Regarding Mr. Lopez' decision to not liquidate his retirement account, the Court notes that under Florida law qualified retirement accounts are generally protected from creditors. *See e.g*, Fla. Stat. §§ 77.041, 222.21.[6]  Moreover, the net proceeds of Mr. Lopez' retirement accounts, after taxes and penalties, would come nowhere near satisfying the collateral requirement in the Order and liquidation of these accounts would leave him and his minor children essentially destitute. Under these circumstances, the Court concludes that Mr. Lopez' decision not to liquidate the accounts in an attempt to partially satisfy the collateral requirement was a reasonable decision that does not warrant a finding of contempt.

### B.     Rosaline Williams

The same reasoning that supports a finding that Mr. Lopez is not in contempt applies equally to Ms. Williams. The testimony established that Ms. Williams possesses even fewer assets than Mr. Lopez. Moreover, like Mr. Lopez, Ms. Williams attempted to secure a collateral bond and offered to pay Liberty Mutual the value of her personal possessions in order to avoid their seizure. The evidence also showed that Ms. Williams had no other assets except a small retirement account containing $60,000 to $70,000, well below the amount of collateral required by the Order. The Court's reasoning regarding the liquidation of Mr. Lopez' retirement account applies equally to Ms. Williams and the Court finds that her decision not to liquidate the account

---

intent of satisfying his overall obligation to Liberty Mutual.

[6] Pursuant to Federal Rule Civil Procedure 69, Florida law applies to the post-judgment collection proceedings in this action.

was reasonable under these circumstances.[7]

### III. Recommendation

For the reasons set forth above, the Court RECOMMENDS that Liberty Mutual Insurance Company's Motion for Order to Show Cause for Contempt in Lieu of Its Motion for Entry of Writ of Attachment and for Contempt [DE 286] be **DENIED**.

### IV. Objections

The parties may file written objections to this Report and Recommendation with the Honorable Alan S. Gold **no later than September 24, 2009**. Failure to timely file objections shall bar the parties from attacking on appeal any factual findings contained herein. *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988).

RESPECTFULLY RECOMMENDED in chambers at Miami, Florida, this 15th day of September, 2009.

_____
CHRIS McALILEY
UNITED STATES MAGISTRATE JUDGE

---

[7] Ms. Williams is the trustee of a trust for the benefit of her minor children, but she testified without contradiction that the trust documents do not authorize her use of the trust assets to satisfy her personal obligations.

Copies to:
The Honorable Alan S. Gold
All counsel of record
Pro se parties via email to avent91@aol.com